IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Nikki M. Brown,<br><br>    Plaintiff,<br><br>v.<br><br>Santander Consumer USA, Inc., and Francisco Sanchez,<br><br>    Defendants. | C/A No. 0:12-2825-CMC-PJG<br><br>**REPORT AND RECOMMENDATION** |

The plaintiff, Nikki M. Brown ("Brown"), filed this case against her former employer, Santander Consumer USA ("SCUSA") and her former supervisor, Francisco Sanchez ("Sanchez"). In her Complaint, Brown asserts claims against SCUSA for (1) sexual harassment *quid quo pro* and creating a hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., and (2) negligent hiring and supervision of Sanchez. Brown also raises claims of assault, battery, outrage, and slander against Sanchez. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motions to compel arbitration and stay the litigation, and in the alternative to dismiss. (ECF Nos. 7 & 14.) Brown responded in opposition to these motions (ECF Nos. 10 &17) and the defendants replied (ECF Nos. 11 & 18).

**DISCUSSION**

**A.    Arbitration Generally**

A litigant can compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., if the litigant can demonstrate: " '(1) the existence of a dispute between the parties; (2) a

written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute.' " Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (quoting Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002)).  The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The policy behind the FAA "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts."  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991).  Thus, courts are to afford a "healthy regard" for the federal policy favoring arbitration, id. at 26, and arbitration agreements are to be "rigorously enforced,"  Perry v. Thomas, 482 U.S. 483, 490 (1987).  Doubts regarding the scope of issues covered by an arbitration agreement must be resolved in favor of arbitration.  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).  The United States Supreme Court has specifically held that the FAA and the policies behind it apply in the employment context.  Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123 (2001).

When a question of arbitrability arises, the district court, not the arbitrator, decides whether a matter should be resolved through arbitration.  See Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2859 (2010); AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 651 (1986).  This determination, however, is limited to a two-step inquiry: (1) whether a valid arbitration agreement exists; and (2) whether the specific dispute falls within the substantive scope of the arbitration agreement.  See Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999).



Arbitration is compelled "unless it may be said with positive assurance that the arbitration [agreement] is not susceptible of an interpretation that covers the asserted dispute." Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)). If all of the claims asserted in a complaint are subject to arbitration, dismissal of the complaint is appropriate. Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001).

**B.    Validity of Arbitration Agreement**

Whether a valid arbitration agreement exists is a question of state contract law. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Here, SCUSA has presented a copy of its arbitration policy which states, in relevant part:

> This Arbitration Policy is intended to broadly cover the entire relationship between Associate and Company and includes, without limitation (except as specifically noted below), any dispute claim or controversy under any state or federal common law or any state or federal statute . . . including but not limited to . . . Title VII of the United States Code. This Arbitration Policy also includes claims that the Associate may bring against other employees or agents of the Company, that are based in whole or in part, on the employment relationship between the Associate and the Company.

(ECF No. 7-2 at 2.) Also presented by SCUSA is a copy of the "Arbitration Acknowledgment," signed by Brown, which reads, "I . . . have reviewed a copy of the SCUSA's Arbitration Policy" and "I further confirm I have been advised that Arbitration is a condition of employment at SCUSA, and that by continuing my employment at SCUSA after being presented with the Arbitration Policy, I will be subject to such policy." (ECF No. 7-2 at 3.) Brown contends that there was no meeting of the minds because she was never presented with the Arbitration Policy, and therefore cannot be bound by it. This argument is not persuasive for two main reasons. First, SCUSA has presented evidence that it shows the Arbitration Policy to each new employee multiple times during training.

PJG

SCUSA has presented a copy of an offer letter signed by Brown directing her to download, review, and complete several documents—including the Arbitration Policy and Acknowledgment—and to bring them to orientation. (ECF No. 11-1 at 4.) SCUSA has also submitted a print-out of the computer-based training on the Arbitration Policy given to new hires, as well as a copy of a record indicating that Brown had reviewed the policy and agreed to it within the computer training. Brown asserts that the link to the policy was not working at the time and that she was instructed to "simply check the acknowledgment box." (ECF No. 17 at 2.) However, even crediting Brown's assertion, it is undisputed that Brown was previously directed to download, read, and complete the Arbitration Policy and Acknowledgment before orientation. Additionally, the Arbitration Acknowledgment signed by Brown states that she has "reviewed a copy of SCUSA's Arbitration Policy" and that she confirms she "[has] been advised that Arbitration is a condition of [her] employment at SCUSA." (ECF No. 7-2 at 3.) By signing the Acknowledgment, Brown gave her confirmation that she had read and was bound by the Arbitration Policy, and that her employment was conditioned upon consenting to the Arbitration Policy. Brown argues that the arbitration agreement is invalid and unenforceable because there was no meeting of the minds and she was unaware of the implications of the arbitration agreement. Brown's arguments are insufficient to avoid a binding arbitration agreement. Munoz v. Green Tree Fin. Corp., 542 S.E.2d 360, 365 (S.C. 2001) ("[A] person who can read is bound to read an agreement before signing it."); Regions Bank v. Schmauch, 582 S.E.2d 432, 440 (S.C. Ct. App. 2003) ("A person signing a document is responsible for reading the document and making sure of its contents. Every contracting party owes a duty to the other party to the contract and to the public to learn the contents of a document before he signs it.").

Because the signed Arbitration Acknowledgment clearly shows an offer and acceptance supported by consideration, the court concludes that the arbitration agreement between Brown and SCUSA is valid.

**C.    Unconscionability**

Brown also asserts that the arbitration agreement is unconscionable because it was an adhesion contract offered on a "take-it or leave-it" basis and because the venue chosen for arbitration—Dallas, Texas—would be too burdensome on her. In South Carolina law, an agreement is unconscionable if there is an absence of meaningful choice on the part of one party due to one-sided contract provisions, and if there are "terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." Simpson v. MSA of Myrtle Beach, Inc., 644 S.E.2d 663, 668 (S.C. 2007) (citing Carolina Health Plan., Inc. v. United HealthCare Servs., Inc., 606 S.E.2d 752, 757 (S.C. 2004)). Also, when determining unconscionability in the context of arbitration agreements, "the Fourth Circuit has instructed courts to focus generally on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker." Id. (citing Hooters of Am., Inc., 173 F.3d at 938). An agreement being made on a "take it or leave it" basis does not make a contract *per se* unenforceable. Munoz, 542 S.E.2d at 365 ("Under state law, an adhesion contract is not per se unconscionable.") (citing Fanning v. Fritz's Pontiac-Cadillac-Buick, Inc., 472 S.E.2d 242 (S.C. 1996)). Moreover, because SCUSA's Arbitration Policy follows the AAA's rules for arbitration, it is clear that SCUSA's policy is "geared towards achieving an unbiased decision by a neutral decision-maker." SCUSA's Arbitration Policy provides that SCUSA is also bound by it, so it is not "one-sided" or "oppressive" against Brown. (ECF No. 7-2 at 2.)  In addition, the AAA's rules provide that if there is a

disagreement as to the location of the arbitration, the arbitrator may determine where the arbitration is to be held. (ECF No. 11-3 at 3.) If the plaintiff does not wish to arbitrate in Dallas, Texas, there is a mechanism that may provide her with relief.

Accordingly, the court concludes that because the arbitration agreement appears to sufficiently attempt to achieve an unbiased decision rendered by a neutral decision maker, and because the agreement is not unduly oppressive towards Brown, it is not unconscionable and is still a valid contract.

**D.     Scope of the Arbitration Agreement**

With the validity of the arbitration agreement established, the next question is whether the dispute is within the scope of the arbitration agreement. The Arbitration Policy clearly provides that it covers "any state claim arising . . . under any state or federal statute" such as "Title VII of the United States Code." (ECF No. 7-2 at 2.) It also provides that claims against "other employees or agents of the Company, that are based in whole or in part, on the employment relationship between the Associate and Company." (Id.) Brown's claims against SCUSA and Sanchez are clearly within the scope of the Arbitration Policy, so those claims must be submitted to arbitration.

**RECOMMENDATION**

The record shows that Plaintiff's claims against SCUSA and Sanchez are covered by a valid arbitration agreement. Those claims must therefore be dismissed. <u>Choice Hotels Int'l, Inc.</u>, 252 F.3d at 709-10. Accordingly, the court recommends that the defendants' motion to compel arbitration (ECF Nos. 7 & 14) be granted and this matter be dismissed.

July 16, 2013  
Columbia, South Carolina

Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).